## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROY STEVEN POTTER,                    )
                                      )
                    Petitioner,       )
                                      )
vs.                                   )          **Case No. 16-CV-077-JHP-TLW**
                                      )
CARL BEAR, Warden,                    )
                                      )
                    Respondent.       )

### OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action.  Petitioner is a state inmate and appears pro se.  In response to the petition (Dkt. # 1), Respondent  filed a motion to dismiss petition for habeas corpus as time barred by the statute of limitations (Dkt. # 11).  Petitioner filed a response to the motion (Dkt. # 13).  For the reasons discussed below, the Court finds that the petition was not timely filed.  Therefore, Respondent's motion to dismiss shall be granted and the petition shall be dismissed with prejudice.

### BACKGROUND

In resolving Petitioner's claims raised on direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) provided a summary of facts.  See Dkt. # 12-2.  Petitioner fails to rebut the OCCA's statement of facts with clear and convincing evidence and it is presumed correct.  See 28 U.S.C. § 2254(e)(1).  Therefore, this Court adopts the following factual summary as its own:

> In August of 1987, Appellant and his best friend, [Shawn Allen] Alicea, stopped in Tulsa on their way from California to Florida.  Alicea had friends in town that the two decided to visit.  Soon after arriving in Tulsa, the two men began frequenting the Elite Bookstore.  The bookstore was a congregation point for homosexuals and many men gathered there each evening.  There was testimony by other patrons of the store that Appellant and Alicea were prostituting themselves, attempting to pick up other men for money, although both men denied the allegations.

. . . .

Alicea testified that . . . the victim in this case, Darrell Keys, was driving around the parking lot.  Another witness, Marion Clifton, who attempted to keep a watch on the bookstore, testified that he had previously seen Keys at the bookstore, although it was infrequently.

Keys was driving a 1986 maroon Chevy Nova with dark tinted windows. Appellant flagged Keys and Keys pulled over.  After Appellant spoke to Keys for a minute, Appellant and Alicea got into the car and went driving.  Clifton testified that although he saw Appellant and Alicea arrive that night, they must have left in a car because if they had walked away from the area, he would have noticed.  Appellant contended at trial that only Alicea had gone with Keys.  He told police officers that Clifton would testify that he had remained at the bookstore all night, however, Clifton testified otherwise.

Eventually, the three men, Appellant, Alicea and Keys, went to the motel room [where Petitioner and Alicea had been staying].  Alicea testified that they drank the rest of the beer and played strip poker.  Keys soon lost all his clothes and the other two took theirs off as well.  Keys began performing oral sodomy on Alicea. Appellant then requested the same.

Keys was lying on his back with Appellant straddled across his chest. Appellant held Keys' head in the proper position with a bandanna behind his neck. Alicea felt sick and got up to go to the bathroom.  When he returned, Appellant had the bandanna around Keys' neck and was choking him.  The medical examiner testified that the cause of death was strangulation.

Appellant and Alicea attempted to clean up the room before they left in Keys' car.  Appellant's fingerprints were identified on several beer cans.  Due to some sort of mismanagement by the police, no other forensic evidence was recovered.

The two men left Tulsa in Keys' car and drove all night until they reached Ocala, Florida.  They stopped at a restaurant and left without paying the bill.  The restaurant manger was able to obtain the license tag number and the police determined that the car belonged to Keys.  The two were apprehended in Daytona Beach on August 16.  Evidence was presented that the two had attempted to sell the Nova a short time before the arrest.

(Dkt. # 12-2 at 3-5).

Based on those events, Petitioner was charged in Tulsa County District Court, Case Nos.

CRF-87-3075 and CRF-87-3375, with Larceny of an Automobile and First Degree Murder,

respectively.  Petitioner proceeded to be tried by a jury.  Evidence presented at trial included the

testimony of Alicea and Alvin Saulmon, a jailhouse informant who shared a cell with Petitioner at

the Tulsa County Jail.  The OCCA summarized Saulmon's testimony, as follows:

> While [celled] together, Appellant told Saulmon the circumstances of the crime in
> great detail.  Appellant told Saulmon that he, Alicea and Keys had gone to the Best
> Budget Motel where they played a drinking game called "quarters" and strip poker.
> Following the games, the three men began to have sex with each other.  Saulmon
> testified, as did Alicea, that the murder occurred while Appellant was straddling
> Keys and supporting his head with a bandanna to better facilitate oral sex.  Appellant
> told Saulmon that Keys did not perform well which angered him to the point that he
> strangled Keys.  Saulmon also testified that Appellant told him that Alicea was
> throwing up in the bathroom while the strangulation occurred.  Appellant described
> Keys' face during and after the strangulation to Saulmon in great detail.

(Dkt. # 12-2 at 6-7).  At the conclusion of trial, the jury found Petitioner guilty as charged.  On June

6, 1988, Petitioner was sentenced, in accordance with the jury's recommendation, to twenty (20)

years imprisonment for the Larceny of an Automobile conviction and to life imprisonment for the

First Degree Murder conviction.  Attorneys Ed Morrison and Robert J. Walpole represented

Petitioner at trial.  See Dkt. # 12-15 at 1.

Petitioner perfected a direct appeal to the OCCA.  On appeal, Petitioner was represented by

attorney Allen Smith.  See Dkt. # 12-1 at 1.  In an unpublished opinion, filed June 18, 1992, in Case

Nos. F-88-1016 and F-88-1017, the OCCA affirmed the judgment and sentence of the trial court

(Dkt. # 12-2).

On December 1, 1993, Petitioner filed an application for post-conviction relief (Dkt. # 12-3).

The state district judge denied the application on December 14, 1993 (Dkt. # 12-4).  Petitioner

appealed and, on February 8, 1994, in Case No. PC-94-46, the OCCA affirmed the denial of post-

conviction relief (Dkt. # 12-6).

On February 3, 2015, or almost twenty-one (21) years after the conclusion of post-conviction proceedings, Petitioner filed a "motion for DNA testing to establish a claim of [actual innocence]" (Dkt. # 12-7).  The state district judge denied the motion for DNA testing on July 7, 2015 (Dkt. # 12-9).

On April 10, 2015, Petitioner filed his second application for post-conviction relief (Dkt. # 12-8).  That application was denied on October 13, 2015 (Dkt. # 12-10).  Petitioner filed a post-conviction appeal.  On January 8, 2016, in Case No. PC-2015-925, the OCCA affirmed the denial of the second application for post-conviction relief (Dkt. # 12-12).

On February 8, 2016, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1), along with a supporting brief (Dkt. # 2).  Petitioner raises one (1) ground of error, as follows:

> Ground 1:    Actual innocence with ineffective assistance of appellate counsel to argue DNA testing on appeal, thus making an unreasonable determination of clearly established federal law.

See Dkt. # 1 at 4.  In response to the petition, Respondent asserts that the petition is time barred. See Dkt. # 11.

### *ANALYSIS*

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted April 24, 1996, established a one-year limitations period for habeas corpus petitions as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  In U.S. v. Simmonds, 111 F.3d 737, 744-46 (10th Cir. 1997), *overruled on other grounds*, U.S. v. Hurst, 322 F.3d 1256 (10th Cir. 2003), the Tenth Circuit Court of Appeals held that for prisoners whose convictions became final before April 24, 1996, the one-year statute of limitations did not begin to run until April 24, 1996.  In other words, prisoners whose convictions became final before April 24, 1996, the date of enactment of the AEDPA, were afforded a one-year grace period within which to file for federal habeas corpus relief. The Tenth Circuit also ruled that the tolling provision of 28 U.S.C. § 2244(d)(2) applied in § 2254 cases to toll the one-year grace period afforded by Simmonds.  Hoggro v. Boone, 150 F.3d 1223 (10th Cir. 1998).  Therefore, the one-year grace period would be tolled during time spent pursuing state applications for post-conviction relief properly filed during the grace period.

**A.  Petition is time barred under § 2244(d)(1)(A)**

Based on application of § 2244(d)(1)(A), this habeas petition was not filed within the one-year limitations period.  Petitioner's convictions became final on September 16, 1992, after the OCCA filed its direct appeal opinion on June 18, 1992, and the 90 day time period for filing a petition for writ of *certiorari* in the United States Supreme Court had lapsed. See Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001).  Thus, Petitioner's conviction became final before April 24, 1996, the date of enactment of the AEDPA.  As a result, Petitioner had to file a habeas petition

within one (1) year after the enactment of the AEDPA, or on or before April 24, 1997.  Hurst, 322 F.3d at 1260-61.

Although the running of the limitations period would be tolled or suspended during the pendency of any post-conviction or other collateral proceeding with respect to the pertinent judgment or claim properly filed during the grace period, 28 U.S.C. § 2244(d)(2); Hoggro, 150 F.3d at 1226, the record cited above confirms that Petitioner's post-conviction applications and other efforts to obtain collateral relief in state court were filed either before or after the grace period and do not serve to toll the statute of limitations.  See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations."); Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001). Therefore, Petitioner is not entitled to tolling under 28 U.S.C. § 2244(d)(2).  Unless Petitioner demonstrates entitlement to equitable tolling, his petition is untimely under § 2244(d)(1)(A).

## B.  Petition is time barred under § 2244(d)(1)(D)

To the extent Petitioner claims that the State's failure to preserve evidence for DNA testing alters the conclusion that this petition is time barred, the claim fails.  As set forth above, § 2244(d)(1)(D) provides that the one-year statute of limitations may begin to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Petitioner claims that DNA testing of samples taken from the murder victim were never performed, but that "had there been evidence [of DNA testing] it would have excluded him as a donor of DNA from the victim."  See Dkt. # 13 at 3.  Petitioner further alleges that  "the State got rid of the [DNA] evidence because they had reason to believe that I didn't commit the crime."  Id.

The record demonstrates that Petitioner knew in June 2001, at the latest, that evidence from his criminal case in possession of the Tulsa Police Department Laboratory was "disposed of" on May 20, 1989. See Dkt. # 12-14 (letter from Oklahoma Indigent Defense System to Petitioner, dated June 8, 2001, advising that evidence had been destroyed). Yet, Petitioner failed to pursue any claim based on disposal of the evidence until February 3, 2015, when he filed a motion for DNA testing. See Dkt. # 12-7. Approximately two (2) months later, on April 10, 2015, Petitioner filed his second application for post-conviction relief, see Dkt. # 12-8, alleging that appellate counsel provided ineffective assistance in failing to pursue DNA testing and that the disposal of evidence violated California v. Trombetta, 467 U.S. 479, 489 (1984).[1] However, the time gap of almost fourteen (14) years between when Petitioner learned the "factual predicate" of his claim, i.e., that the evidence had been destroyed, and when he pursued his claims in state court is not consistent with diligence, as required under § 2244(d)(1)(D). Furthermore, Petitioner's alleged discovery in 2015 that the disposal of the evidence took place at the direction of the state court does not provide a new "factual predicate" for calculation of the one year limitations period.

At the latest, the one-year statute of limitations applicable to a claim based on the State's disposal of evidence began to run when Petitioner learned the "factual predicate" of the claim in June 2001. 28 U.S.C. § 2244(d)(1)(D). Therefore, Petitioner had until June 2002 to raise a claim

---

[1] A state violates a defendant's due process rights when it fails to disclose evidence that is material to the defendant's guilt. Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is considered material to the defendant's guilt when it "possess[es] an exculpatory value that was apparent before the evidence was destroyed and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 489 (citations omitted). If the evidence does not possess apparent exculpatory value before its disposal, however, it may be considered only "potentially useful" evidence; and in that case, due process will not be implicated unless the defendant shows that the police acted in bad faith in failing to preserve it. Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

based on the disposal of evidence in his case.  Petitioner did not seek collateral review of any claim based on the State's disposal of evidence until 2015, long after the one year limitations period had expired.  Therefore, those collateral proceedings did not toll the one year limitations period.  Clark, 468 F.3d at 714.  This petition, filed February 8, 2016, is time barred under § 2244(d)(1)(D) unless Petitioner demonstrates entitlement to equitable tolling.

**C.  Equitable tolling/actual innocence**

The statute of limitations contained in § 2244(d) is not jurisdictional and may be subject to equitable tolling.  See Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998); see also Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). However, to be eligible for equitable tolling, a petitioner must make a two-pronged demonstration: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)), so as to prevent him from timely filing his habeas petition. A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "show specific facts to support his claim of extraordinary circumstances and due diligence." Id. (internal quotation and citation omitted).

As noted above, Petitioner claims that he is actually innocent of the crimes of which he was convicted.  See Dkt. ## 1, 2, 13.  A claim of actual innocence may in fact overcome the bar resulting from the one-year statute of limitations.  See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013); Lopez v. Trani, 628 F.3d 1228, 1231 (10th Cir. 2010) ("Where . . . a petitioner argues that he is entitled to equitable tolling because he is actually innocent, . . . the petitioner need make no showing of cause for the delay."); Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007) ("A claim of

8

actual innocence may toll the AEDPA statute of limitations."). The Tenth Circuit has "stress[ed] that this actual innocence exception is rare and will only be applied in the extraordinary case." Lopez, 628 F.3d at 1231 (internal quotation marks omitted). "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. Bousley v. U.S., 523 U.S. 614, 623-24 (1998).

To take advantage of the "actual innocence" gateway, a habeas petitioner must "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup v. Delo, 513 U.S. 298, 316 (1995). The petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. Moreover, this new evidence must be sufficient to "show that it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Id. at 327; see also House v. Bell, 547 U.S. 518, 536-37 (2006).

Petitioner claims that "had there been evidence [subjected to DNA testing] it would have excluded him as a donor of DNA from the victim." See Dkt. # 13 at 3. That claim fails to support a claim of actual innocence. First, it is far from clear that DNA testing could have been done even if the sample had been preserved.[2] In addition, Petitioner's allegation that the State was motivated

---

[2]During Petitioner's trial, the medical examiner testified that he found no spermatozoa upon microscopic examination of smears made from the victim's oral and anal swabs. See Dkt. # 12-15, Tr. Vol. I at 195. In addition, the serologist testified that, while the oral swabs taken from the victim tested positive for the presence of semen, no sperm were detected in the sample. See id., Tr. Vol. II at 717-18. Thus, because the presence of sperm cells would have been required to conduct DNA testing, at least at the time of Petitioner's trial, id. at 717, the decision to dispose of the evidence in 1989 cannot be faulted.

to destroy the evidence because there was reason to believe Petitioner was innocent is entirely speculative and completely unsupported.  Most importantly, under the facts of this case, even if DNA testing of the oral swab taken from the victim excluded Petitioner as a donor, that evidence would not be exculpatory.  It would simply mean that Petitioner was not the source of the DNA found on the oral swab.  Similarly, the presence of Alicea's DNA on the swab would not be exculpatory as to Petitioner.  As explained by the state district court in denying Petitioner's second application for post-conviction relief,

> [w]hether DNA evidence was recovered on the destroyed items or not would not have been determinative as to Petitioner's guilt or innocence.  Petitioner's fingerprints were recovered on beer cans found at the scene.  Petitioner was arrested in Florida with the victim's car.  Accomplice and jailhouse informant testimony establish Petitioner committed the murder.  And, the accomplice testified in a manner that would have made it likely his DNA, as well as Petitioner's, could have been recovered.  The jury chose not to believe Petitioner's alibi defense at trial.  Where there is enough other incriminating evidence, science alone cannot prove a prisoner innocent. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 129 S. Ct. 2308, 2316, 174 L. Ed. 2d 38 (2009) (citing *House v. Bell*, 547 U.S. 518, 540-48, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

(Dkt. # 12-10 at 6-7).  Other than speculation related to DNA testing of the destroyed evidence, Petitioner presents no new reliable evidence that was not presented at trial.  Instead, Petitioner challenges the sufficiency of the evidence, claiming that both Alicea and Saulmon lied during trial.  Those arguments are insufficient to overcome the statute of limitations bar.  See Bousley, 523 U.S. at 623-24.

Petitioner fails to makes any other argument suggesting he is entitled to equitable tolling.  Furthermore, nothing in the record before the Court suggests that Petitioner is entitled to equitable tolling.  In the absence of equitable tolling, the petition for writ of habeas corpus is clearly time

barred.  Respondent's motion to dismiss shall be granted and the petition for writ of habeas corpus shall be dismissed with prejudice.

### Certificate of Appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).  In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Court's procedural ruling resulting in the dismissal of the petition based on the statute of limitations is debatable.  A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.    Respondent's motion to dismiss petition for writ of habeas corpus as time barred by the statute of limitations (Dkt. # 11) is **granted**.

11

2.      The petition for writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice**.

3.      A separate Judgment shall be entered in this case.

4.      A certificate of appealability is **denied**.

**DATED** this 16th day of February, 2017.

James H. Payne
United States District Judge
Northern District of Oklahoma

12